NO. 07-03-0519-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 13, 2004

_____

IN RE KRISTA E. GLOVER NELSON

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

This is a mandamus proceeding by which Krista Glover Nelson, relator, requests a writ directing the Honorable Steven R. Emmert, Judge of the 31st District Court of Wheeler County, to vacate his order in Cause No. 11,189 that denied relator's petition for writ of habeas corpus concerning her minor daughter. We will deny relator's petition for writ of mandamus.

Relator and real party in interest Jeremiah R. Glover[1] were divorced by the 31st District Court on April 25, 2003, by a final decree of divorce that named them as joint managing conservators of their daughter Reagan Dale Glover, age three. The decree gave

_____

[1]For clarity, we will hereafter refer to Krista Glover Nelson as relator, and will refer to the real party in interest, and to the spouses of both, by their given names.

relator the right to establish the primary residence of the child, and gave Jeremiah the right to possession of the child during specific periods under a standard possession order.

Relator's petition for a writ of habeas corpus was filed September 9, 2003, asserting that Jeremiah was illegally restraining the child and asking that she be returned to relator. The same day, Jeremiah filed a motion entitled Motion for Emergency Possession Order and Temporary Restraining Order in Suit Affecting the Parent-Child Relationship, asking the trial court for relief that included temporary orders for the child's safety and a temporary restraining order against relator. The motion alleged that the Child Protective Services Division of the Texas Department of Protective and Regulatory Services (hereafter referred to as CPS) had determined to remove Reagan from relator's home in Yoakum County because of an allegation of molestation or abuse, but that CPS intended to place her with someone other than Jeremiah, and further stated that Jeremiah had taken the child and returned her to Wheeler County. The trial court heard both relator's habeas corpus petition and Jeremiah's motion on September 23, 2003.

Testimony at the September 23 hearing revealed that the allegations of molestation or abuse against relator and her husband had been made by Jeremiah and his wife Bree, who were residing in Tarrant County. Bree testified that Reagan made a statement to her on September 5, while she and Reagan were in the car during a period of Jeremiah's weekend possession. Bree testified: "She [Reagan] said that Garrett only touches her hiney when he licks it." Garrett Nelson is relator's husband. After Bree reported the statement to Jeremiah, they took Reagan to a Fort Worth hospital for examination. On the advice of Fort Worth CPS representatives, they contacted law enforcement authorities in

2

Yoakum County and, on September 7, took Reagan with them to Yoakum County, where they met with a deputy sheriff and with Kim Pendleton, a CPS worker from Lubbock. Ms. Pendleton interviewed Reagan and made an audiotape of that interview. On September 8, a forensic interviewer conducted an interview of Reagan arranged by CPS and attended also by Kathie Duenes, a CPS investigator. That interview was videotaped. Evidence indicated that during both interviews, Reagan made statements concerning touches and licks to her buttocks or genitals by her mother and Garrett. After the forensic interview, and on the advice of his lawyer, Jeremiah took the child to Wheeler County.

CPS also arranged for relator and her husband Garrett to be interviewed by Dr. Peggy Skinner, a professional counselor, who met with them on September 16. Dr. Skinner also reviewed the video of the forensic interview of Reagan. Dr. Skinner produced a written report, which was admitted at the hearing. The report noted that Reagan's removal to Wheeler County interrupted the investigation of the allegations of her sexual abuse, and listed several areas of concern that needed further investigation. The report included concerns that the allegations were part of an ongoing dispute over custody of Reagan and concerns, based on statements Reagan made during the forensic interview, that the child was being coached. The report concluded that the case was complex but, favorable to relator, also concluded that Reagan should be returned to her mother's possession during completion of the investigation.

Kathie Duenes also testified at the September 23 hearing. Ms. Duenes testified that CPS had not completed its investigation into the alleged abuse, and was not then ready to make a determination concerning the allegations. She testified, though, that she and the

3

other CPS staff members involved in the case, in consultation with Dr. Skinner, had concluded it was in Reagan's best interest for relator to have possession of the child pending completion of the investigation. She stated that she had no reason to believe the child would be in any immediate danger if she were placed back in the home of her mother and stepfather. On cross-examination, Ms. Duenes testified that, as a part of the CPS investigation, a psychological evaluation of the Glovers, like that made of the Nelsons by Dr. Skinner, was desirable.

The trial court also heard testimony from relator and Garrett Nelson, both of whom denied any inappropriate contact with Reagan, and from Jeremiah Glover. At the conclusion of the hearing, the court announced its rulings denying relator's petition for a writ of habeas corpus, finding that there was a serious immediate question concerning the welfare of the child and ordering that Reagan remain with Jeremiah temporarily pending completion of the investigation. The trial court's written order, containing the finding pursuant to section 157.374 of the Family Code regarding the serious immediate question concerning Reagan's welfare, was signed October 14. Tex. Fam. Code Ann. § 157.374 (Vernon 2002).

Under Subchapter H of Chapter 157 of the Family Code, when the right to possession of a child is governed by a valid court order, that right may be enforced by habeas corpus. Tex. Fam. Code Ann. §§ 157.371-.376; *Schoenfeld v. Onion*, 647 S.W. 2d 954 (Tex. 1983) (per curiam); *Strobel v. Thurman*, 565 S.W. 2d 238 (Tex. 1978). The party opposing habeas relief may not use that proceeding to relitigate the terms of the court's order on possession, and the issuance of the writ of habeas corpus is to be

"automatic, immediate, and ministerial, based upon proof of the bare legal right to possession." *Schoenfeld*, 647 S.W. 2d at 955. The rule is not without exception, though, and one of the exceptions is provided by the court's authority under section 157.374 to enter an appropriate temporary order when the court makes a written finding that there exists a serious immediate question concerning the welfare of the child. *Strobel*, 565 S.W. 2d at 239 (citing predecessor Family Code section 14.10(c)). Case law has held that there is a "serious immediate question" concerning a child's welfare when the child is in imminent danger of physical or emotional harm, requiring immediate action to protect the child. *McElreath v. Stewart*, 545 S.W.2d 955, 958-59 (Tex. 1977); *Rocha v. Schuble*, 809 S.W.2d 681, 682-83 (Tex.App.–Houston [14th Dist.] 1991, orig. proceeding).

A trial court's denial of a writ of habeas corpus sought under Subchapter H may be challenged by mandamus. *See Schoenfeld*, 647 S.W.2d at 956. Under the established standards for the issuance of a writ of mandamus, the writ issues to correct a clear abuse of discretion or the violation of a duty imposed by law. *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994). A court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

In its resolution of factual issues, a court abuses its discretion if it rules without supporting evidence, *see Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998), or if it rules contrary to evidence on which the court could reasonably have reached only one conclusion. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992); *see GTE*

*Communication Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). A court also may abuse its discretion by issuing an order that is beyond the court's authority. *McElreath*, 545 S.W.2d at 958-59; *Klein v. Cain*, 676 S.W.2d 165, 170 (Tex.App.–Amarillo 1984, orig. proceeding).

Relator argues that the trial court had before it no evidence of any immediate threat of physical or emotional harm to Reagan. In support of her argument, relator points to the conclusions reached by Dr. Skinner and CPS favoring Reagan's return to her mother pending completion of the CPS investigation. Relator's argument ignores, though, Bree's unchallenged testimony of Reagan's statement about "licks" and the evidence of Reagan's similar statements during the CPS interviews. The evidence before the court included speculation about what Reagan may have meant by the statements, including suggestions that she may have been using the term to refer to spankings, or to bodily touching occurring in the normal course of care of the child. But the evidence was not such as to mandate only one reasonable conclusion as to what the three-year-old was referring when she uttered the statements. Given their worst interpretation, the statements clearly would support a conclusion that Reagan's presence in the Nelson home subjected her to the threat of harm, emotional if not physical.

Relator also points out what she sees as an inconsistency between the trial court's finding a serious immediate question about Reagan's welfare and the terms of the court's temporary order permitting her unsupervised possession by relator. Assuming relator is correct that the two are inconsistent, the inconsistency does not suggest that the court's

finding resulted from an abuse of discretion; at most, it would bring into question the appropriateness of the terms of the court's temporary order.

A court's authority to set temporary orders for immediate protection of a child is not limitless, and the temporary order under section 157.374 should not be a final adjudication of custody. *In re Lau*, 89 S.W.3d 757, 759 (Tex.App.–Houston [1st Dist.] 2002, orig. proceeding); *Young v. Martinez*, 685 S.W.2d 361, 363 (Tex.App.–San Antonio 1984, orig. proceeding). Kathie Duenes testified that the CPS investigation was incomplete. Dr. Skinner's report also called for more information. The trial court's October 14 order states the trial court's intention to enter an additional order concerning evaluation of the child and related matters, and states that the temporary orders are to remain in effect until conclusion of the investigation and evaluation of the pending allegations, as determined by further order of the court. The record before us does not indicate that the trial court has entered additional orders, but relator's petition does not suggest that those terms of the court's order exceeded the court's authority or otherwise involved an abuse of the court's discretion.

Concluding that the trial court did not abuse its discretion by making the finding that there existed a serious immediate question about the child's welfare, we deny relator's petition for writ of mandamus.

Per Curiam